IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGIL A. S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-CV-264-JED-JFJ |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Virgil A. S. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician;

the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 40-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on January 30, 2017, alleging a disability onset date of October 15, 2015. R. 13, 205-213. Plaintiff claimed he was unable to work due to conditions including back problems (narrowing of spine and degenerative disc disease), diabetes, diabetes neuropathy, sleep apnea, and depression. *See* R. 239. Plaintiff's claims for benefits were denied initially on April 19, 2017, and on reconsideration on June 15, 2017. R. 64-119. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on August 6, 2018. R. 33-63. The ALJ issued a decision on August 23, 2018, denying benefits and finding Plaintiff not disabled pursuant to the applicable Medical-Vocational Rules ("grids"). R. 13-27. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2020. R. 15. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date of October 15, 2015. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease left knee; diabetes mellitus with neuropathy; sleep apnea; and obesity. R. 16. He found that Plaintiff's impairment of bipolar II disorder was not severe. *Id.* In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace; and no limitations in the two areas of (1) interacting with others and (2) adapting or managing oneself. R. 16-17. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 17-18.

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that Plaintiff has the RFC to the full range of sedentary work as follows: "Specifically, the claimant can lift and/or carry ten pounds occasionally and up to ten pounds frequently. He can stand and/or walk at least two hours in an 8-hour workday and sit at least six hours in an 8-hour workday." R. 18. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 25. At step five, however, the ALJ found that grid rule 201.25 directed a finding of "not disabled," considering Plaintiff's age, education, work experience, and RFC for the full range of sedentary work. R. 26. Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issues**

Plaintiff raises three points of error in his challenge to the denial of benefits, which the undersigned re-organizes into five for clarity: (1) the ALJ's step two analysis was improper, leading to subsequent failures at the remaining steps; (2) the ALJ did not properly consider Plaintiff's obesity; (3) the ALJ's consistency analysis was flawed; (4) the ALJ improperly

4

evaluated a third-party function report from Plaintiff's wife; and (5) the ALJ's application of the grid rules was improper. ECF No. 15.

## IV. Analysis

### A. ALJ's Step-Two Analysis Was Adequate

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider his shoulder impairments and mental issues. ECF No. 15 at 4-8. Regarding his shoulder impairments, Plaintiff points to various complaints of shoulder pain and diagnoses of shoulder disorders. R. 61, 359-360, 434, 436. Regarding his mental issues, Plaintiff points to the report of consultative examiner Alyssa Rippy, Ph.D. (R. 444-447), and the ALJ's findings of mild limitations in two of the four "paragraph B" criteria (R. 16-17). Plaintiff contends the ALJ should have expressly considered these findings and found his shoulder issues and bipolar disorder to be severe impairments, although he does not point to any particular functional limitations resulting from either impairment.

Plaintiff's arguments fail. As an initial matter, given the fact that the ALJ found Plaintiff to have severe impairments, and addressed his complaints regarding his symptoms, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Moreover, as explained below, the ALJ's consideration of Plaintiff's shoulder and mental impairments was adequate.

5

### 1. Shoulder Impairments

Plaintiff argues the ALJ was required at step two to account for his complaints of shoulder pain and medical providers' diagnoses of shoulder disorders. *See* R. 61, 359-360, 434, 436. Plaintiff's argument is unpersuasive. In determining the RFC, the ALJ noted Plaintiff's testimony supporting shoulder pain. R. 20. The ALJ further noted Plaintiff's complaint of shoulder pain to consultative examiner Jerry First, M.D., in March 2017, and Dr. First's diagnosis of tendinitis in both shoulders. R. 23 (citing R. 434, 436). However, as the ALJ also noted, Dr. First observed normal shoulder ranges of motion. R. 23 (citing R. 438). Plaintiff himself also reported in May 2017 that he could lift ten pounds (R. 290), which is consistent with the RFC (R. 18). While the ALJ did not note Plaintiff's complaints to his medical care provider regarding shoulder pain in August 2011 (R. 359-360), this visit preceded the alleged onset date by more than four years, which renders it less probative regarding Plaintiff's impairments as of the onset date of October 15, 2015. Finally, to the extent Plaintiff argues greater limitations were warranted based on his subjective complaints, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. As explained below in Part IV.D, the ALJ's consistency analysis was proper.

### 2. Mental Impairments

Regarding his mental issues, Plaintiff points to the report of consultative examiner Alyssa Rippy, Ph.D. (R. 444-447), which the ALJ did not specifically address in the decision, and the ALJ's findings of mild limitations in two of the four "paragraph B" criteria (R. 16-17). Again, Plaintiff's argument is unpersuasive. At step two, the ALJ found Plaintiff's medically determinable mental impairment of bipolar II disorder to be non-severe. R. 16-17. In determining the RFC, the ALJ noted Plaintiff's testimony that he suffers from anxiety and depression, and he

6

assigned "great weight" to the opinions of agency psychological reviewers Burnard Pearce, Ph.D., and Cynthia Kampshaefer, Psy.D., both of whom opined that Plaintiff's mental impairments were non-severe (R. 70, 82, 99, 113). R. 20, 24. The ALJ explained that he gave great weight to the agency reviewer opinions, because Plaintiff did not seek mental health treatment until March 2018, *i.e.*, five months before the hearing (R. 653-681), had Celexa prescribed by his primary care provider for only four weeks when evaluated (R. 675), and had attended only one medication management session with an advanced practice registered nurse (R. 672). R. 24. While Plaintiff correctly points out that the ALJ did not mention Dr. Rippy's consultative exam (R. 444-447), Dr. Rippy did not give any specific opinions regarding mental functional limits that required discussion. Further, Dr. Pearce and Dr. Kampshaefer both considered and summarized Dr. Rippy's report in making their determinations that Plaintiff's mental impairments were non-severe. R. 69, 81-82, 99, 113. Under these circumstances, the ALJ did not err by failing to specifically address Dr. Rippy's report. *See Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (finding no error in ALJ's failure to discuss consultative examiner's findings, where claimant "fails to explain how [consultative examiner's] findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work.").

Plaintiff additionally points to the ALJ's findings of mild limitations in two of the four "paragraph B" criteria (R. 16-17) in contending that the ALJ should have added mental limitations to the RFC. However, an ALJ is not necessarily bound by his "paragraph B" findings at steps two and three when determining a claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not

7

necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). The ALJ found Plaintiff experienced mild limitations in two of the four broad areas of mental functioning, but he did not find those limitations sufficiently severe to require functional limitations in the RFC. R. 16, 18. Plaintiff points to no part of the objective medical record to support a finding that his anxiety, depression, or bipolar disorder caused greater limitations than the ALJ found. The undersigned identifies no step-two or RFC error.

  **B. ALJ Properly Considered Plaintiff's Obesity**

Although he raises it under the heading of a step-two error, Plaintiff substantively argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC. An ALJ must consider the effects of obesity as part of the RFC determination. *See* SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).[1] Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.* The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

Here, the ALJ found obesity was a severe impairment at step two. R. 16. At step three, the ALJ explained that, pursuant to SSR 02-01p, obesity can cause the claimant to meet or equal a listing in combination with other impairments. R. 18. He further explained that he took Plaintiff's obesity into consideration in determining the RFC, and that the RFC's standing, walking, lifting,

---

[1] SSR 02-01p was rescinded effective May 20, 2019. However, a reviewing court should apply SSR 02-01p if it remained in effect at the time of the ALJ's decision, as was the case here. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).

carrying, and postural limitations "are in part due to obesity." *Id.* In the RFC discussion, the ALJ noted Plaintiff's testimony that his weight has a part in his back problems (R. 49), his high body-mass index ("BMI") of 50.2 in July 2016 (R. 368), a diagnosis of obesity in June 2015 (R. 332) and a diagnosis of morbid obesity in March 2017 (R. 436). R. 19, 21, 23. In his discussion of the opinion evidence, the ALJ explained that he gave "little weight" to the agency physical reviewers' opinions that Plaintiff could perform light exertion work with postural limitations, because "the claimant's weight would reduce him to sedentary exertion." R. 24.

Plaintiff argues the ALJ should have expressly considered the effect of Plaintiff's obesity on his other impairments. Specifically, Plaintiff points to obesity's effects on his depression, degenerative disc disease, left knee degenerative joint disease, sleep apnea, and diabetes mellitus with neuropathy. *See* ECF No. 15 at 4. He points out that he has been diagnosed not only as obese, but as morbidly obese, noting a BMI as high as 54.0 on March 29, 2017 (R. 435). He also points out that his high BMI places him into Level III obesity, which is termed "extreme" obesity and "represent[s] the greatest risk for developing obesity-related impairments." SSR 02-01p, 2000 WL 628049, at *2.

However, Plaintiff cites to no records in which a medical provider attributed any additional mental or physical functional limitations due to obesity. By contrast, Plaintiff's consultative examiner Dr. First observed in March 2017 that he was morbidly obese, with a BMI of 54, but he had largely normal ranges of motion except for some reduced ranges of motion in the back and hips; could move from reclining to sitting; showed no sign of clubbing or cyanosis but there was 1+ edema up through mid-thigh on both legs; had deep tendon reflexes 1+ throughout; could walk several steps around the examining room without difficulty and down the 70 foot hallway from the exam room; and had a normal, safe, and stable gait without use of an assistive device. R. 436,

9

438-441. Plaintiff points to no specific records to suggest that the ALJ insufficiently considered his obesity. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where "there is no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC"). Accordingly, Plaintiff's argument fails.

The undersigned finds the ALJ's discussion of obesity was proper and sufficient. The ALJ clearly acknowledged and addressed Plaintiff's obesity at steps two and three, and in discussing the RFC, but nonetheless found Plaintiff could perform the full range of sedentary work. The diagnosis of obesity, even extreme obesity, does not necessarily translate into functional limitations. *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 758 (10th Cir. 2019) (noting that SSR 02-01p "does not mandate any additional restrictions or a finding of disability" based on a claimant's obesity). Plaintiff points to no conflict or lack of development in the record regarding obesity. He also has not pointed to any medical evidence indicating his obesity resulted in functional limitations greater than those stated in the RFC. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination); *Johnson*, 764 F. App'x at 758-59 (finding ALJ sufficiently considered obesity where ALJ "discussed the 'possible ramifications' of the claimant's obesity," and where ALJ's RFC determination was supported by agency reviewing physician's reports that considered claimant's obesity) (citing *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004)).

**C.    ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity,

10

persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 20. Plaintiff alleges the ALJ's analysis was insufficient, because he did not properly assess a September 2016 lumbar spine MRI, which revealed degenerative disc disease with fatty marrow replacement involving the L4, L5, and S1 levels, as well as multilevel broad-based disc bulges with facet arthropathy causing varying degrees of central canal stenosis and neural foraminal narrowing. R. 382. Although the ALJ accurately noted the MRI results (R. 21), Plaintiff argues the ALJ "ignored" that objective evidence when assessing Plaintiff's consistency. ECF No. 15 at 11-12. Plaintiff further argues the ALJ "ignored" range of motion testing performed by consultative examiner Dr. First, which revealed decreased ranges of motion in the back and hips. *Id. See* R. 439-440. Plaintiff also lists out various medical records that he argues support his allegations of disabling pain. *See* R. 322 (September 2013 abdominal CT scan), R. 352-353 (June 2014 lumbar spine MRI), R. 460 (February 2017 cervical spine x-ray), R. 637 (July 2017 left knee x-ray), R. 686-687 (July 2018 EMG/nerve conduction study), R. 683 (July 2018 lumbar spine MRI).

The undersigned finds that the ALJ's consistency analysis was proper. The ALJ noted all of the records that Plaintiff identifies, except for the September 2013 CT scan, which pre-dates the alleged onset date by more than two years. R. 20-25. The ALJ nonetheless found Plaintiff's allegations of disabling pain were not consistent with the record. Regarding Plaintiff's back pain, the ALJ noted that in November 2016, Plaintiff reported his pain medication allowed him to interact with his seven-year-old son, mow yards for income, and help around the house. R. 20 (citing R. 478). Later in the decision, the ALJ again noted the July 2018 EMG/nerve conduction

12

study revealing bilateral lower extremity sensory peripheral neuropathy with no lumbar radiculopathy (R. 687), and the July 2018 lumbar MRI revealing multilevel broad-based degenerative disc bulging and facet arthropathy, most significantly noted at the LR-5 and L5-S1 disc levels (R. 683). R. 25. Nonetheless, the ALJ stated that Plaintiff "has reported on numerous occasions that his pain medication allows him to work, play with his son, and do household chores," and that he "helped his parents move and he moved his family." R. 25. *See, e.g.*, R. 332 (Plaintiff reported in June 2015 that Percocet decreased his pain to 0-4/10, allowing him to mow and play with his five-year-old son), R. 478 (Plaintiff reported in November 2016 that Percocet decreased his pain level to 4-6 depending on his activity level, allowing him to work occasionally, interact with his seven-year-old son, mow yards for income, and help around the house), R. 482 (Plaintiff reported in January 2017 increased back pain because he had been helping his parents move, and Percocet had been reducing his pain to 5/10 for up to two hours), R. 509 (Plaintiff reported in August 2017 that Percocet was effective in reducing his chronic neck and lower back pain without any side effects), R. 511 (Plaintiff reported same in September 2017, adding that his medications helped increase his activities of daily living), R. 541 (Plaintiff reported in March 2018 that his pain was stable, "just sore due to the weather changes," that he was staying active as tolerated, and his medications were effective), R. 545 (Plaintiff reported he was taking his pain medications as prescribed with an average pain level of 3-4/10).

The ALJ was entitled to consider the effectiveness of Plaintiff's medications in giving him significant pain relief as evidence that his back pain was not as severe as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3) (Commissioner must consider effectiveness and side effects of medication in alleviating pain when considering statements regarding symptoms). Plaintiff's

consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p.

### D. ALJ Properly Evaluated Third-Party Report from Plaintiff's Wife

Plaintiff argues that the ALJ improperly considered a third-party function report from Plaintiff's wife (R. 265-272).[3] SSR 06-03p requires the ALJ to consider evidence from "other sources," such as relatives. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).[4] When such an opinion "may have an effect on the outcome of the case," the ALJ should explain the weight given to the opinion or otherwise ensure that the discussion of the evidence allows a subsequent reviewer to follow his reasoning. *Id.* at *6. In evaluating evidence from sources such as a spouse, the ALJ may appropriately consider such factors as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.*

Here, the ALJ gave the wife's statement "little weight," as "it is a lay opinion based upon casual observation, rather than objective medical examination and testing." R. 24. The ALJ further explained that the wife's statement "is potentially influenced by loyalties of family" and "certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities." *Id.* The ALJ concluded that, "[u]ltimately, this statement is not persuasive for the same reasons set forth in finding the claimant's allegations to be less than wholly consistent with the evidence." *Id.*

---

[3] Plaintiff raises this allegation under the heading of an error in the consistency analysis (ECF No. 15 at 12), but he does not connect his argument in any coherent way to his consistency discussion. Therefore, the undersigned addresses it as a separate allegation of error.

[4] SSR 06-03p was rescinded effective March 27, 2017, but it still applies to claims that were filed before that date. *See* 82 Fed. Reg. 15263-01, 15263, 2017 WL 1105348 (Mar. 27, 2017).

14

Plaintiff argues the ALJ erred by finding that the wife's statement may be influenced by loyalty for Plaintiff, because such a finding would always be grounds for dismissing a spouse's report. The undersigned identifies no error. The ALJ considered Plaintiff's wife's statement, as he was required to do. However, the ALJ was not required to give this statement any particular weight, and the ALJ explained his reasons for giving little weight to this statement. The ALJ's speculation as to Plaintiff's wife's familial sympathy is not itself a basis for finding the ALJ's evaluation inadequate. *See* SSR 06-03p (in considering evidence from non-medical sources such as parents, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence").

### E.     ALJ's Step Five Analysis Was Proper

Plaintiff contends the ALJ erred in his step-five finding that Plaintiff was not disabled pursuant to grid rule 201.25. R. 26. Plaintiff contends he has significant non-exertional impairments that prevent application of the grids. Specifically, he argues he cannot perform any competitive work "due to the physical and mental effects of his pain and neuropathic symptoms," as well as his shoulder pain, depression, and non-exertional limitations resulting from his severe impairments. ECF No. 15 at 8-9.

At step five, the Commissioner bears the burden to show that the claimant can perform other work that exists in the national economy. *See Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the grids, found at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). "The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience." *Thompson*, 987 F.2d at 1487. The regulations identify three broad age

categories for this purpose: younger person (under age 50, with subcategories in certain circumstances of ages 18-44 and 44-49), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 and over). 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e).

At the time of the ALJ's decision, Plaintiff was 41 years old and fell into the subcategory of a younger individual age 18-44. Based on his age, his limited education, non-transferable skills, and his RFC for the full range of sedentary work, grid rule 201.25 directed a finding of "not disabled." R. 25-26. Plaintiff effectively challenges the RFC based on the same arguments raised in Parts IV.A-C, and he points to no particular records suggesting that additional RFC limitations were required. As explained above in those sections, the ALJ committed no error in determining Plaintiff's exertional and non-exertional impairments based on the allegations Plaintiff raises in his briefing. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (noting that the ALJ is not required to include limitations in the RFC or step-five inquiry that are not supported by the record). As a result, the ALJ appropriately applied grid rule 201.25 in concluding that Plaintiff was not disabled. The undersigned identifies no error at step five.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 16, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 2nd day of October, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**