UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGIL A. S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CV-264-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 20) of United States Magistrate Judge Jodi F. Jayne, recommending that the Court affirm the Commissioner's denial of plaintiff's application for benefits.

**I.**

Plaintiff was forty-years old when, on January 30, 2017, he applied for benefits under Title II and Title XVI of the Social Security Act. Dkt. # 10 at 13, 88, 89. He alleged disability as of October 15, 2015, due to back problems (narrowing of spine and degenerative disc disease), diabetes, diabetes neuropathy, sleep apnea, and depression. Id. at 239. The Commissioner denied his claims initially on April 14, 2017, and on reconsideration on June 13, 2017. Id. at 88, 91. Plaintiff requested a hearing before an administrative law judge (ALJ), and ALJ Lantz McClung conducted the hearing on August 6, 2018. Id. at 33-63, 147. The ALJ issued a decision on August

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

23, 2018, denying benefits. Id. at 13-27. The Appeals Council denied review, and plaintiff filed the instant action seeking review by the Court. Id. at 1-3; Dkt. # 2.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b). However, the parties may "serve and file specific written objections" to the proposed findings and recommendations within fourteen days after being served with a copy of the recommended disposition. Id.; see also 28 U.S.C. § 636(b)(1); Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

The right to de novo review is subject to the Tenth Circuit's "firm-waiver rule," which states that "a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1059-60 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Id. at 1060. The Tenth Circuit has applied the firm-waiver rule where the plaintiff's objection to the report and recommendation merely asserted a series of errors without explaining why the magistrate's reasoning was erroneous. See Zumwalt v. Astrue, 220 F. App'x 770, 777 (10th Cir. 2007).

### III.

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and therefore entitled to benefits. See 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)). "Step one requires the claimant to demonstrate 'that he is not presently engaged in substantial gainful activity.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir.2005)). "At step two, the claimant must show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan, 399 F.3d at 1261). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If the claimant meets this burden, the analysis continues to step five, where the burden of proof shifts to the Commissioner to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given the claimant's age, education, and work experience. Id. (citing Hackett, 395 F.3d at 1171).

In reviewing the ALJ's decision, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ; the Court's task is to review the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" O'Dell v. Shalala, 44

F.3d 855, 858 (10th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## IV.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 15, 2015, and was insured up to December 31, 2020. Dkt. # 10, at 15. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease in the left knee; diabetes mellitus with neuropathy; sleep apnea; and obesity. Id. at 16. The ALJ found that plaintiff's impairment of bipolar II disorder was not severe. Id. In assessing plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that plaintiff had mild limitations understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. The ALJ found no limitations in the areas of interacting with others and adapting or managing oneself. Id. 16-17. At step three, the ALJ found that plaintiff had no impairment or combination of impairments severe enough to reach the level of a listed impairment. Id. at 17-18.

The ALJ then summarized the evidence, medical and nonmedical, and plaintiff's testimony in order to determine his RFC. Id. at 18-25. Ultimately, the ALJ concluded that plaintiff had the capacity to perform the full range of sedentary work: "[T]he claimant can lift and/or carry ten pounds occasionally and up to ten pounds frequently. He can stand and/or walk at least two hours in an 8-hour workday and sit at least six hours in an 8-hour workday." Id. at 18. At step four, the

ALJ found that plaintiff was unable to perform any past relevant work. Id. at 25. At step five, the ALJ found that grid rule 201.25 directed a finding of "not disabled," considering plaintiff's age, education, work experience, and RFC for the full range of sedentary work. Id. at 26. Accordingly, the ALJ concluded plaintiff was not disabled.

V.

Plaintiff's objection alleges five points of error. He argues (1) that the ALJ failed to properly account for plaintiff's shoulder impairment at step two and, consequently, when evaluating plaintiff's RFC; (2) that the ALJ failed to adequately evaluate plaintiff's obesity; (3) that the ALJ failed to conduct a proper consistency analysis; (4) that the ALJ failed to properly weigh a third-party report submitted by plaintiff's wife; and (5) that the ALJ improperly used the grid rules at step five to reach a finding of not disabled. The Court addresses each of these arguments in turn.

A.      **Shoulder Impairments**

Plaintiff argues that the ALJ failed to properly classify his shoulder problems as a severe impairment (or an impairment of any kind) at step two, which led an RFC finding that also failed to account for his shoulder impairments. Dkt. # 21, at 3-5. He contends that, although the record shows various complaints of shoulder pain and diagnoses of shoulder disorders, the ALJ failed to discuss his shoulders when identifying plaintiff's medically determinable impairments at step two. He further argues that, as a result of this alleged error, the ALJ failed to properly consider limitations caused by plaintiff's shoulder impairments when determining his RFC.

This argument is unavailing. As an initial matter, the ALJ's failure to consider plaintiff's shoulder impairments at step two was legally irrelevant because only one severe impairment was required to advance the analysis to step three. See Allman v. Colvin, 813 F.3d 1326, 1330 (10th

5

Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Moreover, the ALJ adequately considered plaintiff's shoulder issues when determining his RFC. In determining the RFC, the ALJ noted plaintiff's testimony on the issue, his complaint of shoulder pain during a March 2017 visit to consulting examiner Jerry First, M.D., and Dr. First's diagnosis of tendinitis in both shoulders. Dkt. # 10, at 20, 23 (citing id. at 434, 436). The ALJ also noted, however, that Dr. First observed normal shoulder ranges of motion. Id. at 23 (citing id. at 438). Thus, although the ALJ did not identify plaintiff's shoulder condition as an impairment at step two, the ALJ clearly treated it as such during the subsequent steps of the analysis. Furthermore, plaintiff himself reported in May 2017 that he could lift ten pounds. Id. at 290. As the ALJ's RFC finding is consistent with this self-reported limitation, it seems doubtful that a more elaborate discussion of plaintiff's shoulder impairment would have led to a different outcome.

**B.     Obesity**

Plaintiff argues that the ALJ did not follow the Commissioner's rules regarding the evaluation of a claimant's obesity. Dkt. # 21, at 5-6. An ALJ must consider the effects of obesity as part of the RFC determination. See SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).[2] The Commissioner describes obesity as an impairment that can manifest mental, social, exertional and postural limitations, though the type and degree of the limitations will depend on the individual.

---

[2] SSR 02-01p was rescinded effective May 20, 2019. However, a reviewing court should apply SSR 02-01p if it remained in effect at the time of the ALJ's decision, as was the case here. See SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).

See id. at *6. ALJs are not to make assumptions about the severity or functional effects of obesity. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Id.

Here, the ALJ found obesity to be a severe impairment at step two, and explained at step three that obesity, in combination with other impairments, can result in a listing-level impairment. Dkt. # 10, at 16, 18. He further stated that he took obesity into consideration in determining the RFC, and that the RFC's exertional and postural limitations were "in part due to obesity." Id. at 18. This assertion is borne out in the ALJ's decision, which discusses testimony regarding the effect his weight has had on his back problems, his high body-mass index, and his diagnosis of obesity in June 2015 and morbid obesity in March 2017. Id. at 19, 21, 23, (citing id. at 49, 332, 368, 436). It is also supported by the ALJs treatment of the opinion evidence, where he gave "little weight" to the opinions of state-agency reviewers because "[plaintiff's] weight would reduce him to sedentary exertion." Id. at 24. This was sufficient.

Although plaintiff argues that the ALJ should have expressly discussed the effect of plaintiff's obesity on his other impairments, plaintiff points to no evidence in the record that would connect his obesity to any limitations not already accounted for in his RFC. On the contrary, when Dr. First observed that plaintiff was morbidly obese in March 2017, the exam showed that plaintiff had a largely normal range of motion except for some limitations in his back and hips, that he could walk without difficulty, and that he had a normal gait. Id. at 436, 438-41. Given that the ALJ addressed plaintiff's obesity at length and expressly considered it in reaching the RFC determination, plaintiff's failure to connect his obesity to any additional limitations is fatal to his argument. See Jimison ex rel. Sims v. Colvin, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where "there is no record indication of any functional limitations

7

from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC").

C. **Consistency**

Plaintiff argues that the ALJ failed to conduct a proper consistency analysis. Dkt. # 21, at 6-8. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Id. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id. Factors the ALJ should consider include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012); see also SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact"; accordingly, courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue,

---

[3] The Commissioner previously called this a "credibility" analysis rather than a "consistency" analysis. See SSR 16-3p (superseding SSR 96-7p). In practice, however, there is little substantive difference between the two. See Brownrigg v. Berryhill, 688 F. App'x 542,545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive when making a consistency determination.

552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ "need not make a formalistic factor-by-factor recitation of the evidence," so long as she sets forth the specific evidence she relies on. Keyes-Zachary, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Plaintiff argues that, in finding his alleged symptoms were not entirely consistent with the evidence, the ALJ ignored "probative, objective medical evidence" related to plaintiff's diagnoses of degenerative disc disease and osteoarthritis. Dkt. # 21, at 7. This is plainly untrue. As Judge Jayne points out in the report and recommendation, the ALJ discussed nearly all of the records plaintiff identifies as having been "ignored." See Dkt. # 20, at 12. The lone exception is a September 2013 CT scan, which is of limited relevance because it predated the alleged onset of disability by two years. Plaintiff's argument fails to confront these portions of the ALJ's decision. Plaintiff also fails to meaningfully address the evidence the ALJ cited in support of his consistency finding. As noted by both the ALJ and Judge Jayne, plaintiff was able to move his parents and his family, and he "reported on numerous occasions that his pain medication allows him to work, play with his son, and do household chores." Dkt. # 20 at 13; Dkt. # 10 at 25; see also Dkt. # 10, at 332, 478, 482, 509, 511, 541, 545 (various medical records showing that plaintiff regularly reported to his doctors that medication kept his pain under control and allowed him to be active). Plaintiff has not explained why it was improper for the ALJ to consider these facts when assessing the consistency of his testimony regarding the degree to which his impairments are disabling.

In sum, having reviewed the record, the Court finds that the ALJ's consistency analysis was sufficient and that his finding is supported by substantial evidence.

**D.      Third-Party Report**

Plaintiff argues that the ALJ failed to properly weigh a third-party report submitted by plaintiff's spouse. Dkt. # 21, at 8. ALJs must consider evidence from "other sources," such as relatives of the claimant. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).[4] Although testimony from such sources cannot establish the existence of a medically determinable impairment, it may provide insight into the severity of the impairment and how it affects the individual's ability to function. Id. at *2. When considering statements from people who have a personal rather than professional relationship with the claimant, it is appropriate to consider factors such as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." Id. at *6.

Here, the ALJ gave plaintiff's wife's statement "little weight" because it was "lay opinion based on casual observation, rather than objective medical examination and testing." Dkt. # 10, at 24. The ALJ further reasoned that her statement was "potentially influenced by loyalties of family" and did not "outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities." Id. As the rules permit adjudicators to consider the nature of the witness's relationship and the consistency of his or her testimony with other evidence, the ALJ's assessment of the statement submitted by plaintiff's spouse was appropriate, and the Court finds no error.

---

[4]   The Social Security Administration rescinded SSR 06-03p effective March 27, 2017, but it still applies to claims that were filed before that date. See 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

E.     **Application of Grid Rules**

Plaintiff contends the ALJ erred in his step-five finding that plaintiff was not disabled pursuant to grid rule 201.25. Dkt. # 21, at 8-9. In meeting its burden at step five, the Commissioner may rely on the grid rules—found in 20 C.F.R. Part 404, Subpart P, Appendix 2—to show that the claimant is capable of doing other work. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The grids contain tables of rules that direct a determination of disabled or not disabled based on the claimant's RFC category, age, education, and work experience. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).

In this case, plaintiff was 41 years old at the time of the ALJ's decision, therefore falling into the subcategory of a younger individual age 18-44. Given plaintiff's limited education, non-transferable skills, and RFC (which permitted him to do a full range of sedentary work), the ALJ found that grid rule 201.25 directed a finding of "not disabled." Dkt. # 10 at 25-26.

Plaintiff argues that the ALJ should not have given the grids conclusive effect. Under the Commissioner's rules, the grids should only be used to direct a conclusive finding if the claimant can perform all or substantially all of the exertional demands at a given level of exertion (i.e., sedentary work, light work, etc.), and the claimant's RFC includes no nonexertional limitations. See Thompson v. Sullivan, 987 F.2d 1482, 1487-89 (10th Cir. 1993); SSR 83-11, 1983 WL 31252 (February 26, 1979). Plaintiff contends that the ALJ should not have used the grids in this case because, contrary to the ALJ's RFC finding, plaintiff cannot perform the full range of sedentary work and has nonexertional limitations. This argument fails, however, because the ALJ's RFC finding is, for the reasons set out above, supported by substantial evidence. Thus, because the ALJ's RFC provided for a full range of sedentary work and included no nonexertional limitations, it was appropriate for the ALJ to apply the grid rules to conclusive effect.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 20) is **accepted**, and the Commissioner's decision denying benefits is **affirmed.** A separate judgment is entered herewith.

**DATED** this 9th day of August, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE